

1   Joshua J. Pollack (SBN 215922)
2   PROSKAUER ROSE LLP
    2049 Century Park East, Suite 3200
3   Los Angeles, CA 90067-3206
4   Telephone: (310) 557-2900
    Facsimile: (310) 557-2193
5   jpollack@proskauer.com

6
    Peter J.W. Sherwin (Applying for *Pro Hac Vice* Admission)
7   Jonathan G. Ellison (Applying for *Pro Hac Vice* Admission)
8   PROSKAUER ROSE LLP
    Eleven Times Square
9   New York, NY 10036
10  Telephone: (212) 969-3000
    Facsimile: (212) 969-2900
11  psherwin@proskauer.com
12  jellison@proskauer.com

13  Attorneys for
14  O2CNI CO., LTD.

15
                    UNITED STATES DISTRICT COURT
16
                    NORTHERN DISTRICT OF CALIFORNIA
17

18  *In re Ex Parte* Application of:        Case No.: **1 2 5 MISC**
19  O2CNI CO., LTD.,   CV 1 3   80
20                              Applicant.   **O2CNI'S MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
21                                           **SUPPORT OF**
22                                           **ITS *EX PARTE* APPLICATION FOR**
                                             **AN ORDER PURSUANT TO 28**
23                                           **U.S.C. 1782 GRANTING**
24                                           **DISCOVERY FOR USE IN**
                                             **FOREIGN PROCEEDINGS**
25

26

27

28

BY FAX

1

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................................................ 1

    A.    O2CNI and the Entity and Individual from Whom Discovery Is
        Sought ........................................................................................................................ 1

    B.    Business Partnership between O2CNI and Symantec ............................................ 2

    C.    Symantec's Solicitation of O2CNI Employees, Theft of O2CNI
        Trade Secrets, and Unfair Competition against O2CNI ........................................ 3

    D.    Criminal Proceedings in Korea ............................................................................... 5

    E.    Anticipated Civil Litigation in Japan ...................................................................... 7

II.    ARGUMENT ................................................................................................................... 7

    A.    Section 1782's Statutory Requirements for Relief Are Satisfied ........... 9

        1.    Each of the Symantec Parties Resides or Is Found in
              the Northern District of California ......................................................... 9

        2.    The Discovery Is for Use in a Proceeding before a
              Foreign Tribunal ................................................................................... 10

            a.    The Korean Criminal Proceedings ..................................... 11

            b.    The Japanese Litigation ...................................................... 12

        3.    O2CNI Is an Interested Person in Each of the
              Proceedings ........................................................................................... 12

            a.    The Korean Criminal Proceedings ..................................... 12

            b.    The Japanese Litigation ...................................................... 13

    B.    The *Intel* Discretionary Factors Favor Granting O2CNI's
        Application ............................................................................................................. 14

        1.    The Symantec Parties Are Not Participating in the
              Foreign Proceedings ............................................................................ 14

i

2.    Korean and Japanese Courts Are Receptive to
      Discovery under Section 1782 ........................................................ 15

3.    O2CNI's Request Is Not an Attempt to Evade
      Foreign Proof-Gathering Restrictions ........................................ 16

4.    O2CNI's Application Is Not Unduly Intrusive or
      Burdensome ................................................................................... 17

C.    An *Ex Parte* Application Is Proper Here ................................................ 18

III.    CONCLUSION .............................................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

O2CNI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. 1782 GRANTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
    No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)..............9

*In re Application of Hill,*
    No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. Jun. 3, 2005) ...................12

*In re Application of Imanagement Services Ltd.,*
    No. Civ.A. 05-2311(JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006)................15

*In re Application of Michael Wilson & Partners, Ltd.,*
    No. 06–cv–02575–MSK–PAC (MEH), 2007 WL 2221438 (D. Colo. Jul.
    27, 2007).......................................................................................................9-10

*In re Clerici,*
    481 F.3d 1324 (11th Cir. 2007).........................................................................14

*In re Edelman,*
    295 F.3d 171 (2d Cir. 2002)................................................................................8

*In re Ex Parte Apple Inc.,*
    MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012)....................18

*In re Ex Parte LG Electronics Deutschland GmbH,*
    No. 12cv1197–LAB (MDD), 2012 WL 1836283 (S.D. Cal. May 21, 2012).....16

*In re Futurecorp Intern. Pty Ltd.,*
    No. C12-80267 MISC CRB (LB), 2012 WL 5818288 (N.D. Cal. Nov. 15,
    2012).............................................................................................................8, 18

*In re Gianasso,*
    No. C 12-80029, MISC SI., 2012 WL 651647 (N.D. Cal. Feb. 28, 2012)....8, 13

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,*
    539 F.2d 1216 (9th Cir. 1976)..................................................................11,16, 18

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan,*
    16 F.3d 1016 (9th Cir. 1994)........................................................................11, 16

iii

*In re Mak*,
  No. C 12–80118 MISC SI, 2012 WL 1965846 (N.D. Cal. May 31,
  2012).............................................................................................................. 10, 18

*In re Marano*,
  No. CV–09–80020–MISC–DLJ, 2009 WL 482649 (N.D. Cal., Feb. 25,
  2009)..................................................................................................................... 18

*In re Pimenta*,
  No. 12–24043–MC–ALTONAGA/Simonton, 2013 WL 1846632 (S.D.
  Fla. Apr. 17, 2013) .............................................................................................. 12

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011).......................................................................... 11, 15

*In re Republic of Ecuador*,
  No. 2:11-mc-00052, 2011 WL 4089189 (E.D. Cal. Sept. 13, 2011) .................. 10

*In re Republic of Ecuador*,
  No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept.
  15, 2010)............................................................................................................... 18

*In re Republic of Ecuador*,
  Nos. C 11–80171 CRB, C 11–80172 CRB, 2011 WL 4434816 (N.D. Cal.
  Sept. 23, 2011)...................................................................................................... 10

*In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech
  Republic*,
  748 F. Supp. 2d 522 (E.D.Va. 2010)................................................................... 14

*In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul,
  Korea*,
  555 F.2d 720 (9th Cir. 1977).......................................................................... 11, 16

*In re Roebers*,
  No. C12–80145 MISC RS (LB), 2012 WL 2862122 (N.D. Cal. Jul. 11,
  2012)....................................................................................................................... 9

*In re Servicio Pan Americano de Proteccion*,
  354 F. Supp. 2d 269 (S.D.N.Y. 2004).............................................................. 8, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ....................................................................................passim

*London v. Does 1-4*,
  279 Fed. Appx. 513 (9th Cir. 2008) ........................................................................ 9

*Marubeni America Corp. v. LBA Y.K.*,
  335 Fed. Appx. 95 (2d Cir. 2009) ........................................................................ 16

*U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy
  Prosecutor General of the Russian Federation*,
  235 F.3d 1200 (9th Cir. 2000)............................................................................ 11

*Weber v. Finker*,
  554 F.3d 1379 (11th Cir. 2009)............................................................................ 11

**STATUTES**

28 U.S.C. § 1782....................................................................................passim

1    Applicant O2CNI Co., Ltd. ("O2CNI"), a corporation duly organized under
2  the laws of Korea, submits this memorandum of points and authorities in support of
3  its concurrently filed *ex parte* application (the "Application") seeking an order
4  pursuant to 28 U.S.C. § 1782 granting O2CNI discovery from Symantec
5  Corporation ("Symantec Corp.") and Symantec Corp. employee Steven James
6  Owyang ("Owyang" and collectively with Symantec Corp. the "Symantec Parties")
7  for use in foreign criminal and civil legal proceedings, including the issuance of the
8  subpoenas annexed to the Application as Exhibits A and B (the "Subpoenas") and
9  subsequent supplementary subpoenas for documents and testimony concerning
10 information revealed from the responses to the Subpoenas.

11 **I.    STATEMENT OF FACTS**

12    The facts summarized below are set out in: (1) the Declaration of Hee Shin,
13 the Chief Executive Officer of O2CNI ("Shin Decl."); (2) the Declaration of
14 Kwangnam Son, Esq., counsel to O2CNI in Korea ("Son Decl."); and (3) the
15 Declaration of Kenji Tosaki, Esq., counsel to O2CNI in Japan ("Tosaki Decl.").

16    **A.    O2CNI and the Entity and Individual from Whom Discovery Is**
17          **Sought**

18    Applicant O2CNI (formerly known as PC Doctor) is a corporation duly
19 organized and existing under the laws of the Republic of Korea with its headquarters
20 in Seoul, Korea.  (Shin Decl. ¶ 2.)

21    O2CNI seeks documents and testimony from Symantec Corp., a corporation
22 organized under the laws of Delaware which conducts business and maintains its
23 principal executive office at 350 Ellis Street, Mountain View, California 94043. (*Id.*
24 ¶ 3.)

25    O2CNI also seeks documents and testimony from Owyang, an individual
26 working in Mountain View, California as an employee of Symantec Corp. and
27 residing at 1630 Tupolo Drive, San Jose, California 95124.  (*Id.* ¶ 4.)

28

1

1

### B.    Business Partnership between O2CNI and Symantec

2    O2CNI is a leading global developer and provider of remote technical support
3  services, which involve troubleshooting technical problems with a customer's
4  computer remotely without requiring an actual visit by a technician. Before
5  O2CNI's entry into the market, there were few if any providers of remote technical
6  support services due to the high bandwidth and communication fees involved and
7  the need for a comprehensive knowledge base categorizing the thousands of
8  technical problems that customers may be facing. (*Id.* ¶¶ 5-6.)

9    In 2004, in partnership with Korean internet service provider Hanaro
10  Telecom, Inc. ("Hanaro Telecom," now known as SK Broadband Co., Ltd.), O2CNI
11  launched and operated the world's first profitable remote technical support service.
12  It used a unique communications network that substantially lowered communication
13  fees and also employed a detailed customer relation management knowledge base
14  that O2CNI and its affiliate Rsupport Co., Ltd. had systematically compiled over the
15  course of the previous three years. O2CNI's unique communications network and
16  knowledge base are the key to the profitability, quality and sustainability of
17  O2CNI's business, and O2CNI has thus kept details of these vital trade secrets
18  strictly confidential. (*Id.* ¶¶ 7-8.)

19    In 2005, O2CNI was approached by Symantec Corp., a leading international
20  security service provider that sells internet security and anti-virus products under the
21  "Norton" brand name through its regional subsidiaries (Symantec Corp. and its
22  subsidiaries hereinafter collectively known as "Symantec"). Symantec Corp.
23  proposed a partnership between O2CNI and its Korean subsidiary ("Symantec
24  Korea") whereby O2CNI would provide its remote technical support services to
25  Norton users who subscribe to Hanaro Telecom in Korea. O2CNI and Symantec
26  Corp.'s Irish subsidiary, Symantec Limited, entered into a license agreement for this
27  purpose, and the service was launched as "Hanafos Norton Plus." (*Id.* ¶¶ 3, 9.)

28

O2CNI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. 1782 GRANTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1    Following the success of Hanafos Norton Plus, Symantec was eager to
2  expand the scope of its relationship with O2CNI and partnered with O2CNI to offer
3  O2CNI's remote technical support services through Symantec's online store in both
4  Korea and Japan.  O2CNI provided its services via its call center in Korea, where
5  O2CNI employed both Korean and Japanese employees in order to service
6  customers in both countries.  Due to O2CNI's proprietary communications network,
7  calls from Symantec's Japanese customers were billed at local Korean rates, thereby
8  keeping rates low.  O2CNI also created a modified knowledge base that was tailored
9  to Symantec's Japanese customers.  O2CNI's communications network and
10 knowledge base thus continued to remain essential O2CNI trade secrets, key to the
11 operation of O2CNI's remote technical support business.  (*Id.* ¶¶ 10-11.)

12    In early 2010, Symantec and O2CNI began coordinating the launch of a new
13 remote technical support service to customers of Open Computer Network
14 ("OCN"), a Japanese high speed internet service provider owned by Japan's giant
15 communications group NTT Communications Corporation.  O2CNI and Symantec
16 Corp.'s Japanese subsidiary ("Symantec Japan") entered into an agreement on
17 August 27, 2010, and O2CNI began providing remote technical support services to
18 OCN internet subscribers on September 1, 2010.  (*Id.* ¶ 12.)

19    At no time over the course of O2CNI's and Symantec's business partnership
20 did O2CNI share or give Symantec access to O2CNI's trade secrets.  (*Id.* ¶ 13.)

21    C.   **Symantec's Solicitation of O2CNI Employees, Theft of**
22         **O2CNI Trade Secrets, and Unfair Competition against O2CNI**

23    Between October 2011 and December 2011, five key O2CNI employees
24 resigned from O2CNI ostensibly for reasons varying from the need to return home
25 to having to look after ill parents.  These included Young-Oh Yeom, Yong Sok
26 Song and Dae Yeol Kim (core O2CNI workforce with full knowledge of O2CNI's
27 trade secrets) and Yong Ho Ro and Sung Kyung Kim (who oversaw the Japanese
28

3

1  operation) (collectively, the "Former Employees"). Immediately after leaving
2  O2CNI, however, each of the Former Employees was hired by Symantec in Korea.
3  Despite assurances by Symantec that the Former Employees' work at Symantec is
4  unrelated to their previous duties at O2CNI, O2CNI has learned that the Former
5  Employees actually manage a Symantec call center in Korea that provides remote
6  technical support services in direct competition with O2CNI. (*Id.* ¶¶ 14-16.)

7      Upon further investigation, O2CNI has also learned that, in the one and a half
8  years prior to their departure, Young-Oh Yeom, Sung Kyung Kim and Yong Ho Ro
9  engaged in unusually frequent email exchanges with two Symantec employees,
10  Owyang and his superior Kevin Paul Chapman ("Chapman"). Many of these
11  communications were made without copying O2CNI executives, in violation of
12  O2CNI's internal reporting procedures. Although several of the Former Employees
13  attempted to destroy their emails and computer files prior to resigning, O2CNI has
14  been able to recover a number of emails suggesting that some or all of the Former
15  Employees had disclosed confidential O2CNI trade secrets to Owyang, Chapman
16  and other Symantec personnel while still working at O2CNI. (*Id.* ¶¶ 17-18.)

17      On July 27, 2012, Symantec informed O2CNI that it would not renew
18  O2CNI's contract for the provision of remote technical support services to OCN
19  customers in Japan. Immediately after the expiration of the contract on August 31,
20  2012, Symantec began providing the very same remote technical support services to
21  OCN customers from its own call center in Korea, which was being managed by
22  Young-Oh Yeom and other Former Employees. Symantec also informed O2CNI
23  that effective December 31, 2012, it was terminating all other contracts related to
24  Japan. With all of the services that O2CNI had been providing in Japan now taken
25  over by Symantec's in-house division, O2CNI completely lost its market share in
26  Japan. (*Id.* ¶¶ 19-22.)

27
28

4

1    Symantec meanwhile had been providing its own remote technical support
2  services in countries outside Korea and Japan since 2009 under the brand names
3  "NortonLive" and later "Norton One." However, Symantec's services had shown
4  sluggish sales and were not commercially viable until 2011-2012 – the very period
5  when O2CNI believes Symantec was conspiring with the Former Employees to steal
6  O2CNI's trade secrets – when the services suddenly showed dramatic
7  improvements.  (*Id.* ¶ 23.)

8    It took O2CNI almost nine years to build the proprietary knowledge base and
9  communications network that enabled O2CNI to become the market leader in
10  remote technical support services, and then Symantec was able to overtake O2CNI
11  in less than a year after Symantec hired O2CNI's Former Employees and acquired
12  information from them about O2CNI's business.  Symantec would not have been
13  able to develop a profitable remote support service so rapidly unless it and its
14  employees Owyang and Chapman wrongfully acquired O2CNI's trade secrets and
15  intellectual property from the Former Employees.

16    **D.    Criminal Proceedings in Korea**

17    In December 2011, O2CNI submitted a request for investigation to the
18  Korean National Intelligence Service ("NIS") alleging that the five Former
19  Employees were illegally disclosing O2CNI trade secrets to Symantec in order to
20  enable Symantec to unfairly compete against O2CNI.  The NIS conducted a
21  preliminary review of the file and turned the matter over to the Gyeonggi Provincial
22  Police Agency, which promptly initiated a criminal investigation in February/March
23  2012 (the "Korean Criminal Proceedings").  (*Id.* ¶¶ 24-25.)

24    At various times during their investigation, Korean authorities requested
25  O2CNI's assistance in collecting evidence in aid of the investigation.  O2CNI has
26  cooperated fully, providing witness testimony and turning over the documents that it
27  has been able to locate as a result of its own efforts.  O2CNI also understands that
28

1 | on March 15, 2012, Korean authorities executed search and seizure warrants against
2 | Symantec Korea and each of the Former Employees located in Korea, and recovered
3 | significant evidence of the wrongdoing of the accused. (*Id.* ¶¶ 16-27.)

4 | However, the Korean police have informed O2CNI that despite their efforts to
5 | do so, they have been unable to (a) collect any documents from Symantec Corp. that
6 | are stored or held outside Korea; or (b) interview or collect documents from
7 | Owyang or Chapman because both are outside Korea. (*Id.* ¶ 28.) Further, there are
8 | no mechanisms under Korean law that would permit Korean authorities to compel
9 | Symantec Corp. or Owyang to give testimony or produce documents in the United
10 | States in aid of the criminal investigation currently underway in Korea without the
11 | assistance of the United States government or judiciary. (Son Decl. ¶ 5.)

12 | In October and November 2012, in support of the Korean Criminal
13 | Proceedings, O2CNI submitted a complaint, request for punishment, and concurring
14 | opinion, alleging and providing further evidence that the Former Employees,
15 | Symantec and Symantec employees Owyang and Chapman violated the Korean
16 | Unfair Competition Prevention and Trade Secret Protection Act and wrongfully
17 | acquired, used, and disclosed O2CNI's trade secrets. (Shin Decl. ¶ 29.) These
18 | offenses are punishable by up to ten years of imprisonment and the imposition of a
19 | punitive fine. (Son Decl. ¶ 3.)

20 | The Korean Police then submitted O2CNI's complaint, the evidence and
21 | testimony it had collected, and a recommendation of indictment to the Korean
22 | Public Prosecutor's Office. (Shin Decl. ¶ 30.) The Korean Public Prosecutor's
23 | Office is continuing to collect documents and evidence as part of its investigative
24 | powers in preparation for filing a formal indictment against the Former Employees,
25 | Symantec, Owyang and Chapman for violation of the Korean Unfair Competition
26 | Prevention and Trade Secret Protection Act and for the wrongful acquisition, use
27 | and disclosure of O2CNI's trade secrets. (*Id.* ¶ 31, Son Decl. ¶ 4.)

28 |

1       Any documents or testimony obtained by O2CNI from the Symantec Parties

2 in the United States pursuant to Section 1782 would be of great assistance to the

3 prosecution of the Korean Criminal Proceedings. (Shin Decl. ¶ 32.)

4      **E.**   **Anticipated Civil Litigation in Japan**

5       Symantec's wrongful solicitation of the Former Employees, acquisition of

6 O2CNI's trade secrets, and use of such trade secrets to compete against O2CNI in

7 Japan would also likely constitute a violation of Japan's Unfair Competition

8 Prevention Act, as well as a breach of the agreement between Symantec Japan and

9 O2CNI. (Tosaki Decl. ¶ 3.) Based on the facts of which it is aware, O2CNI

10 anticipates that it will commence a lawsuit against Symantec Korea, Symantec

11 Japan, and/or Symantec Corp. before the commercial courts in Japan (the "Japanese

12 Litigation"). (Shin Decl. ¶ 33.)

13       A Japanese court may order a party to produce documents or provide

14 testimony in connection with a civil litigation. However, the Japanese court does

15 not have jurisdiction to order the production of documents by a third party located in

16 the United States, nor would it have jurisdiction to compel a third party outside

17 Japan to provide testimony. (Tosaki Decl. ¶¶ 4-5.)

18       Any documents or testimony obtained by O2CNI from the Symantec Parties

19 in the United States pursuant to Section 1782 relating to the wrongful conduct

20 described above would thus be of great assistance to the Japanese Litigation. (Shin

21 Decl. ¶ 33.)

22 **II.**   **ARGUMENT**

23      28 U.S.C. § 1782 authorizes foreign tribunals, litigants and other "interested

24 persons" to obtain discovery in the United States for use in foreign or international

25 proceedings. The statute provides in relevant part:

26         The district court of the district in which a person resides

27         or is found may order him to give his testimony or

28

1         statement or to produce a document or other thing for use

2         in a proceeding in a foreign or international tribunal,

3         including criminal investigations conducted before formal

4         accusation. The order may be made pursuant to a letter

5         rogatory issued, or request made, by a foreign or

6         international tribunal or upon the application of any

7         interested person and may direct that the testimony or

8         statement be given, or the document or other thing be

9         produced, before a person appointed by the court.

10   28 U.S.C. § 1782(a). This Court thus has authority to grant a discovery request

11   pursuant to Section 1782 where the following requirements are met:

12         (1) the person from whom the discovery is sought resides

13         or is found in the district of the district court to which the

14         application is made, (2) the discovery is for use in a

15         proceeding before a foreign tribunal, and (3) the

16         application is made by a foreign or internal tribunal or

17         "any interested person."

18   *In re Gianasso*, No. C 12-80029 MISC SI., 2012 WL 651647, *1 (N.D. Cal. Feb.

19   28, 2012). *Accord In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002). As

20   discussed in Section III.A. below, each of these three elements is satisfied here.

21        Where, as here, the application meets the statutory requirements, the district

22   court has discretion to grant a Section 1782 application where it "would advance the

23   twin aims of the statute, which are to provide efficient means of assistance to

24   participants in international litigation in our federal courts, and to encourage foreign

25   countries by example to provide similar means of assistance to our courts." *In re*

26   *Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004).

27   *Accord In re Futurecorp Intern. Pty Ltd.*, No. C12-80267 MISC CRB (LB), 2012

28

1  WL 5818288, *2 (N.D. Cal. Nov. 15, 2012). The Supreme Court in *Intel Corp. v.*
2  *Advanced Micro Devices, Inc.* set out four non-exclusive factors that a court may
3  consider in exercising its discretion under Section 1782:

4              (1) whether the "person from whom discovery is sought is
5              a participant" in the foreign case; (2) the nature and
6              character of the foreign proceeding, and whether the
7              foreign court is receptive to judicial assistance from the
8              United States; (3) whether the discovery request is an
9              attempt to avoid foreign evidence-gathering restrictions;
10             and (4) whether the discovery request is "unduly intrusive
11             or burdensome."

12  542 U.S. 241, 264-66 (2004). *Accord London v. Does 1-4*, 279 Fed. Appx. 513, 515
13  (9th Cir. 2008). As discussed in Section III.B. below, each of the four discretionary
14  *Intel* factors also weighs in favor of granting O2CNI's application.

15         **A.    Section 1782's Statutory Requirements for Relief Are Satisfied**
16                 *1.    Each of the Symantec Parties Resides or Is Found*
17                       *in the Northern District of California*

18         The first requirement of Section 1782 concerns personal jurisdiction and
19  broadly covers any person who resides or is found within the district.

20         A corporation "resides" or is "found" in a district where it maintains an office
21  or conducts business. *In re Roebers*, No. C12–80145 MISC RS (LB), 2012 WL
22  2862122, *2-3 (N.D. Cal. Jul. 11, 2012) (subpoenaed corporations with addresses in
23  the Northern District of California are "residents" thereof); *In re Application of*
24  *Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL
25  3844464, *4 (S.D.N.Y. Dec. 29, 2006) (corporation that maintains headquarters in
26  New York is "found" in the Southern District of New York); *In re Application of*
27  *Michael Wilson & Partners, Ltd.*, No. 06–cv–02575–MSK–PAC (MEH), 2007 WL
28

9

1 | 2221438 *2 (D. Colo. Jul. 27, 2007) (corporations with their principal place of
2 | business in Colorado are "found" in the District of Colorado).

3 |     An individual who maintains a residence within a district will be found to be
4 | "residing" there for the purposes of Section 1782. *See, e.g., In re Mak*, No. C 12–
5 | 80118 MISC SI, 2012 WL 1965896, *2 (N.D. Cal. May 31, 2012); *In re the*
6 | *Republic of Ecuador*, Nos. C 11–80171 CRB, C 11–80172 CRB, 2011 WL
7 | 4434816, *2 (N.D. Cal. Sept. 23, 2011).  Similarly, an individual is "found" within
8 | any district where he or she is employed.  *See, e.g., In re Republic of Ecuador*, No.
9 | 2:11-mc-00052, 2011 WL 4089189, *2 (E.D. Cal. Sept. 13, 2011) (individual
10 | employed by University of California at Davis was "found" within the Eastern
11 | District of California).

12 |     Here, Symantec Corp.'s principal executive office is located at 350 Ellis
13 | Street, Mountain View, California 94043, which is within this district.  (Shin Decl. ¶
14 | 3.)  Accordingly, Symantec Corp. is "found" in the Northern District of California.
15 | Owyang is currently working in Mountain View, California as an employee of
16 | Symantec Corp. and is thus also "found" in the Northern District of California.  (*Id.*
17 | ¶ 4.)  Additionally, Owyang "resides" within the Northern District of California
18 | because he maintains a residence at 1630 Tupolo Drive, San Jose, California 95124,
19 | which is within this district.  (*Id.* ¶ 4.)  Thus, the first requirement is satisfied as to
20 | both parties from whom disclosure is sought.

21 |          *2.*     ***The Discovery Is for Use in a Proceeding before a Foreign***
22 |                   ***Tribunal***

23 |     The second requirement is satisfied because the discovery sought by O2CNI
24 | is for use in the Korean Criminal Proceedings and the Japanese Litigation, and each
25 | of these is a "proceeding before a foreign tribunal."

26 |
27 |
28 |

10

1                    a.      The Korean Criminal Proceedings

2          The courts have long held that discovery may be granted under Section 1782

3    for use in foreign criminal proceedings. *See, e.g., In re Premises Located at 840*

4    *140th Ave. NE, Bellevue, Wash.,* 634 F.3d 557, 562 (9th Cir. 2011); *In re Request*

5    *for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea,* 555 F.2d

6    720, 723 (9th Cir. 1977); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,*

7    539 F.2d 1216, 1217 (9th Cir. 1976).

8          Further, it is entirely appropriate to grant Section 1782 discovery even before

9    criminal charges have been filed.  Section 1782 expressly provides that discovery

10   may be granted for use in proceedings before a foreign tribunal, including "criminal

11   investigations conducted before formal accusation."  As the Supreme Court held in

12   *Intel*, the applicant need only establish that a dispositive ruling by a foreign tribunal

13   be "within reasonable contemplation" in order to be eligible for relief under Section

14   1782, and there is no requirement that the foreign proceedings be "pending" or

15   "imminent."  542 U.S. at 259.  Accordingly, courts routinely order discovery under

16   Section 1782 for use in foreign criminal investigations where no formal accusatory

17   papers have yet been filed and even when no case is yet pending or imminent. *See,*

18   *e.g., U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy*

19   *Prosecutor General of the Russian Federation*, 235 F.3d 1200 (9th Cir. 2000); *In re*

20   *Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016

21   (9th Cir. 1994); *Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009).

22         Here, O2CNI seeks the requested discovery in part to assist the Korean

23   Criminal Proceedings that are currently underway against the Former Employees,

24   Symantec, and Symantec employees Owyang and Chapman.  Although O2CNI

25   cannot know precisely when formal charges will be filed, there is no question that

26   such charges are at least "within reasonable contemplation," if not imminent.

27

28

11

O2CNI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. 1782 GRANTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1                  b.    The Japanese Litigation

2        Where the applicant for Section 1782 relief alleges wrongdoing that could

3 reasonably give rise to foreign litigation, federal courts will grant discovery in aid of

4 such anticipated proceedings. *See, e.g.*, *In re Pimenta*, No. 12–24043–MC–

5 ALTONAGA/Simonton, 2013 WL 1846632, *5 (S.D. Fla. Apr. 17, 2013) (granting

6 Section 1782 discovery in aid of an anticipated litigation related to a specified

7 settlement agreement); *In re Application of Hill*, No. M19-117 (RJH), 2005 WL

8 1330769, *5 (S.D.N.Y. Jun. 3, 2005) (applicants entitled to Section 1782 discovery

9 in aid of potential foreign litigation because applicants asserted serious allegations

10 sounding in fraud and future litigation was thus "reasonably contemplated").

11       Here, the requested discovery is also being sought by O2CNI for use in the

12 anticipated Japanese Litigation. The Japanese Litigation will be a judicial

13 proceeding before a foreign tribunal and, although the Japanese Litigation has not

14 yet been commenced, an eventual dispositive ruling therein is within "reasonable

15 contemplation" and, thus, is sufficient as per *Intel*. That is because, as in *Pimenta*

16 and *Hill*, O2CNI has made serious allegations that, once proven, would constitute a

17 violation of Japanese unfair competition and trade secret laws and a breach of the

18 agreement between O2CNI and Symantec Japan. (Tosaki Decl. ¶ 3.)

19      ***3.    O2CNI Is an Interested Person in Each of the Proceedings***

20       O2CNI qualifies as an "interested person" in both the Korean Criminal

21 Proceedings and the Japanese Litigation.

22            a.    The Korean Criminal Proceedings

23      As the Supreme Court stated in *Intel*, "interested persons" include not only

24 litigants before foreign or international tribunals but also any other person who

25 "possesses a reasonable interest in obtaining judicial assistance." 542 U.S. at 256.

26 The Supreme Court thus held that a complainant who filed an antitrust complaint

27 with the European Commission was an "interested person" in the investigation and

28

1  prosecution of such complaint by the Commission. Although the complainant was
2  not a party or a litigant to the prosecution, the Supreme Court found that it
3  nonetheless had a "significant role in the process" because it had triggered the
4  investigation and because it had the right to submit evidence to the Commission. *Id.*
5  Similarly, this Court has held that the victim of a crime who initiated a criminal
6  investigation in a foreign jurisdiction by filing a formal complaint is an "interested
7  person" in such investigation under Section 1782. *In re Gianasso*, No. C12-80029
8  MISC SI, 2012 WL 651647, *2 (N.D. Cal. Feb. 28, 2012).

9       O2CNI triggered the ongoing Korean Criminal Proceedings by filing a
10  request for investigation in December 2011 and a formal complaint in November
11  2012. (Shin Decl. ¶¶ 24-30.) O2CNI has actively participated in the Korean
12  Criminal Proceedings by submitting witness statements and documentary evidence
13  to the Korean authorities, and anticipates that the Public Prosecutor's Office will ask
14  O2CNI to provide further testimony and documents in connection with the eventual
15  criminal hearing. (*Id.* ¶¶ 24-30; Son Decl. ¶ 7.) Further, as the victim in the Korean
16  Prosecution, O2CNI has the right to present testimony directly to the Korean
17  criminal court during trial. (Son Decl. ¶ 8.) Given O2CNI's significant role and
18  participation rights, O2CNI is thus an interested person in the Korean Criminal
19  Proceedings.

20                    b.      The Japanese Litigation

21       There is no question that, as a litigant in the Japanese Litigation, O2CNI is an
22  "interested person" for the purposes of Section 1782. As the Supreme Court stated
23  in *Intel*, "[n]o doubt litigants are included among, and may be the most common
24  example of, the interested persons who may invoke § 1782." 542 U.S. at 256.

25
26
27
28

1

**B.    The Intel Discretionary Factors Favor Granting O2CNI's**
       **Application**

*1.    The Symantec Parties Are Not Participating in the Foreign*
       *Proceedings*

The Supreme Court stated in *Intel* that "when the person from whom discovery is sought is a participant in the foreign proceeding... the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." 542 U.S. at 264. Thus, courts applying this factor look primarily to whether "the requested discovery is available to the foreign tribunal without the assistance of the Court." *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 526 (E.D.Va. 2010) (citing *In re Clerici*, 481 F.3d 1324, 1334–35 (11th Cir. 2007)).

Both of the Symantec Parties have been named in the Korean Criminal Proceedings, and Korean authorities have attempted to execute warrants on and request interviews from each of them. However, the Symantec Parties have thus far refused to participate in the proceedings and have not complied with the Korean authorities' requests for documents and interviews. (Shin Decl. ¶ 28.) Thus, the Symantec Parties are not participants in the Korean Civil Proceedings in the sense of this *Intel* factor and, further, the requested discovery would not be available to the Korean courts without the assistance of the United States government or judiciary. (Son Decl. ¶ 5.) Accordingly, the first *Intel* factor weighs in favor of granting discovery.[1]

_____

[1]    Symantec has not yet commenced the Japanese Litigation and it is as yet unknown whether the Symantec Parties will participate in such proceedings.

14

1
2

### 2.    *Korean and Japanese Courts Are Receptive to Discovery under Section 1782*

3    In considering whether to exercise its discretion to grant Section 1782
4    discovery, courts may also consider "the nature of the foreign tribunal, the character
5    of the proceedings underway abroad, and the receptivity of the foreign government
6    or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*,
7    542 U.S. at 264.

8    Courts have determined that the receptivity of a foreign court to U.S. federal
9    judicial assistance may be inferred from the existence of treaties that facilitate
10   cooperation between the U.S. federal judiciary and the foreign jurisdiction. *In re*
11   *Application of Imanagement Services Ltd.*, No. Civ.A. 05-2311(JAG), 2006 WL
12   547949, *4 (D.N.J. March 3, 2006) (citing *In re Servicio Pan Americano de*
13   *Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004)). Both Korea and Japan
14   have entered into treaties with the United States for mutual legal assistance
15   ("MLATs") in criminal matters, pursuant to which the Korean and Japanese
16   Ministers of Justice may request the assistance of the United States government with
17   the taking of testimony or collection of documents in the United States. (Son Decl.
18   ¶ 5; Tosaki Decl. ¶ 6.) In order to execute such requests, the United States
19   government would typically then apply to a district court for the issuance of a
20   subpoena pursuant to Section 1782. *See, e.g., In re Premises Located at 840 140th*
21   *Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 565 (9th Cir. 2011). The discovery of
22   documents and testimony in the United States pursuant to Section 1782 has thus
23   been implicitly endorsed by foreign signatories to MLATs, including Korea and
24   Japan.

25   The receptivity of Korean and Japanese courts to judicial assistance under
26   Section 1782 is also evidenced by the fact that courts in both jurisdictions have
27   themselves applied directly to United States District Courts for such assistance in
28

15

1   the past. *See, e.g., In re Letters Rogatory from Tokyo Dist. Prosecutor's Office,*

2   *Tokyo, Japan*, 16 F.3d 1016 (9th Cir. 1994); *In re Request for Judicial Assistance*

3   *from Seoul Dist. Criminal Court, Seoul, Korea,* 555 F.2d 720 (9th Cir. 1977); *In re*

4   *Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1217 (9th Cir.

5   1976).

6        Further, there is no evidence to suggest that Japanese courts would be

7   unreceptive to the discovery of documents or testimony in the United States for use

8   in civil proceedings. Indeed, federal courts regularly grant applications by private

9   litigants for Section 1782 discovery for use in civil proceedings in Japan. *See, e.g.,*

10   *Marubeni America Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 96 (2d Cir. 2009); *In re*

11   *Ex Parte LG Electronics Deutschland GmbH*, No. 12cv1197–LAB (MDD), 2012

12   WL 1836283, *2 (S.D. Cal. May 21, 2012).

13           **3.**    ***O2CNI's Request Is Not an Attempt to Evade Foreign***

14                ***Proof-Gathering Restrictions***

15        O2CNI is not aware of any rule or legal maxim in Korea or Japan that would

16   preclude or restrict O2CNI from seeking or obtaining discovery in the United States

17   under Section 1782 and, as such, the third *Intel* factor favors discovery. (Son Decl.

18   ¶ 6; Tosaki Decl. ¶ 6.)

19        Indeed, were the Symantec Parties and the requested documents located in

20   Korea, the Korean police and Public Prosecutor's Office would have been able to

21   collect the documents and interview the Symantec Parties directly. However,

22   because the documents sought are either on Symantec's servers in the United States

23   or in the possession of individuals found in the United States, discovery cannot be

24   obtained in this case without the assistance of a United States court. (Son Decl. ¶ 5.)

25   O2CNI's application is thus an attempt to *assist* the proof-gathering efforts of the

26   Korean authorities, not an attempt to evade Korean proof-gathering restrictions.

27

28

1    Similarly, a Japanese court may order a party located in Japan to provide

2    testimony or produce documents for use in a civil litigation. (Tosaki Decl. ¶¶ 4-5.)

3    O2CNI's application to a United States court for the production of documents and

4    testimony in the United States thus in no way constitutes an evasion of Japanese

5    proof-gathering restrictions.

6        **4.    O2CNI's Application Is Not Unduly Intrusive or Burdensome**

7        O2CNI's document requests are tailored to seek information that is relevant to

8    the Korean Criminal Proceedings and the Japanese Litigation, and production of

9    such documents and testimony would therefore impose no undue burden on the

10   Symantec Parties.

11       Requests 1 and 17 of the Subpoenas relate to Symantec's document retention

12   policies and Symantec's and Owyang's non-participation in the Korean Criminal

13   Proceedings, and are relevant to determining whether Symantec and Owyang have

14   attempted to conceal the alleged wrongdoing by purging relevant documents from

15   their files or transferring information to servers outside of Korea. (Shin Decl. ¶¶

16   32a, 32g.)

17       Request 2 relates to the identification of Symantec employees who would

18   have knowledge of the wrongful disclosure and appropriation of O2CNI's trade

19   secrets in order to unfairly compete against O2CNI. (*Id.* ¶ 32b.)

20       Request 3 relates to the whereabouts of Owyang, in the event he attempts to

21   avoid service of the subpoena, and of Chapman, in order to enable O2CNI to seek

22   discovery from him individually. (*Id.* ¶ 32c.)

23       Request 4 relates to the wrongful solicitation and retention of the Former

24   Employees by Symantec in order to unfairly compete against O2CNI. (*Id.* ¶ 32d.)

25       Requests 5 to 11 relate to communications with the Former Employees and

26   the transmission of O2CNI's confidential information and trade secrets to Symantec,

27   including communications relating to the words "ROI Project," "Project Red" and

28

1  "IR People" which are all words that O2CNI has discovered in other

2  communications concerning the disclosure of O2CNI's confidential information and

3  trade secrets. (*Id.* ¶ 32e.)

4      Requests 12 to 16 relate to Symantec's use of O2CNI's trade secrets and

5  confidential information to unfairly compete against O2CNI. (*Id.* ¶ 32f.)

6      C.  **An *Ex Parte* Application Is Proper Here**

7      The Ninth Circuit and numerous courts in this District have held that an

8  application for discovery under Section 1782 may properly be made *ex parte*

9  because "[t]he witnesses can ... raise[ ] objections and exercise[ ] their due process

10  rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist.*,

11  539 F.2d 1216, 1219 (9th Cir. 1976). *See, e.g., In re Futurecorp Intern. Pty Ltd.*, No.

12  C12-80267 MISC CRB (LB), 2012 WL 5818288, *2 (N.D. Cal. Nov. 15, 2012); *In*

13  *re Mak*, No. C 12–80118 MISC SI, 2012 WL 1965896, *2 (N.D. Cal. May 31,

14  2012); *In re Ex Parte Apple Inc.,* MISC 12-80013 JW, 2012 WL 1570043, *1 (N.D.

15  Cal. May 2, 2012); *In re Republic of Ecuador,* No. C-10-80225 MISC CRB (EMC),

16  2010 WL 3702427, *2-3 (N.D. Cal Sept. 15, 2010); *In re Marano*, No. CV–09–

17  80020–MISC–DLJ, 2009 WL 482649, *3 (N.D. Cal., Feb. 25, 2009).

18      There would be no prejudice to the Symantec Parties by this order being

19  granted *ex parte* because each of the Symantec Parties will have the opportunity to

20  seek to quash any subpoena served upon it or him.

21  **III.  CONCLUSION**

22      For all the foregoing reasons, this Court should grant O2CNI's application in

23  all respects and grant such other and further relief as to this Court shall seem just.

24

25

26

27

28

1    DATED: June 14, 2013

2                                              PROSKAUER ROSE LLP
                                              Joshua J. Pollack (SBN 215922)
3                                             Peter J.W. Sherwin
                                              (Applying for *Pro Hac Vice* Admission)
4                                             Jonathan G. Ellison
                                              (Applying for *Pro Hac Vice* Admission)
5

6

7                                             _____
                                              Joshua Pollack
8
                                              Attorneys for O2CNI Co., Ltd.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              19