1  Joshua J. Pollack (SBN 215922)
2  PROSKAUER ROSE LLP
   2049 Century Park East, Suite 3200
3  Los Angeles, CA 90067-3206
   Telephone: (310) 557-2900
4  Facsimile: (310) 557-2193
5  jpollack@proskauer.com

6  Peter J.W. Sherwin (Applying for *Pro Hac Vice* Admission)
7  Jonathan G. Ellison (Applying for *Pro Hac Vice* Admission)
8  PROSKAUER ROSE LLP
   Eleven Times Square
9  New York, NY 10036
10 Telephone: (212) 969-3000
   Facsimile: (212) 969-2900
11 psherwin@proskauer.com
12 jellison@proskauer.com

13 Attorneys for
14 O2CNI CO., LTD.

*FILED*

*JUN 1 4 2013*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

15              UNITED STATES DISTRICT COURT
16              NORTHERN DISTRICT OF CALIFORNIA

*CRB*

17
18 *In re Ex Parte* Application of **CV 13 80 125 MISC**

Case No.:

19 O2CNI CO., LTD.,

20                          Applicant.

21

22

23

24

25

**DECLARATION OF KENJI TOSAKI
IN SUPPORT OF O2CNI'S *EX
PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C.
1782 GRANTING DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS**

26

27

28

BY FAX

I, Kenji Tosaki, Esq., hereby declare:

1. I am an attorney-at-law admitted to practice in Japan (a member of the Dai-ichi Tokyo Bar Association) and am a member of the firm Nagashima Ohno & Tsunematsu, attorneys for O2CNI Co., Ltd. ("O2CNI").

2. I make this declaration on behalf of O2CNI in support of its *ex parte* application for an order pursuant to 28 U.S.C. 1782 granting discovery for use in anticipated civil litigation in Japan (the "Japanese Litigation"). Except as otherwise indicated, I have personal knowledge of the facts set forth below and, if called as a witness, could and would testify competently thereto.

3. I have reviewed the declaration of Hee Shin filed concurrently with this declaration. The facts alleged therein support a private cause of action in Japan for violation of the Japanese Unfair Competition Prevention Act, in addition to any contractual claims subject to the jurisdiction of Japanese courts (such as claims under the agreement between Symantec Japan and O2CNI).

4. Under Article 220 of the Code of Civil Procedure of Japan, a party to a civil litigation may move the court for an order compelling the production of documents by an individual or entity within the jurisdiction of the court. However, a Japanese civil court does not have the power to compel the production of documents by third parties located in the United States.

5. Under Japanese law, the court may also order individuals located in Japan to submit to "witness examination" or "party examination" in connection with a civil litigation. However, a Japanese civil court does not have the power to compel the giving of testimony by third parties located in the United States.

6. I am aware of no provision of Japanese law that would preclude or restrict O2CNI from seeking the assistance of United States courts to obtain discovery of documents and testimony in the United States in aid of civil litigation in Japan. Indeed, Japan is a signatory to a Treaty on Mutual Legal Assistance in

Criminal Matters, pursuant to which the Japanese Minister of Justice may seek the assistance of United States authorities with the discovery of documents and testimony in the United States in aid of criminal proceedings in Japan. A copy of the aforementioned treaty is annexed hereto as Exhibit A.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on: June 13, 2013

Kenji Tosaki, Esq.

DECLARATION OF KENJI TOSAKI IN SUPPORT OF O2CNI'S *EX PARTE* APPLICATION
FOR AN ORDER PURSUANT TO 28 U.S.C. 1782 GRANTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# Exhibit A

# Exhibit A

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO


| 108TH CONGRESS<br>*1st Session* | SENATE | TREATY DOC.<br>108–12 |
| --- | --- | --- |

## MUTUAL LEGAL ASSISTANCE TREATY WITH JAPAN

———

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

TREATY BETWEEN THE UNITED STATES OF AMERICA AND JAPAN ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, SIGNED AT WASHINGTON ON AUGUST 5, 2003; INCLUDING A RELATED EXCHANGE OF NOTES



NOVEMBER 24, 2003.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

———

U.S. GOVERNMENT PRINTING OFFICE

29–118                    WASHINGTON : 2003

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *November 24, 2003.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty Between the United States of America and Japan on Mutual Legal Assistance in Criminal Matters, signed at Washington on August 5, 2003. I transmit also, for the information of the Senate, a related exchange of notes and the report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties negotiated by the United States in order to counter criminal activities more effectively. The Treaty should be an effective tool to assist in the investigation and prosecution of a wide variety of crimes. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: taking testimony, statements, or items; examining persons, items, or places; locating or identifying persons, items, or places; providing items from governmental departments or agencies; inviting persons to testify in the requesting Party; transferring persons in custody for testimony or other purposes; assisting in proceedings related to forfeiture and immobilization of assets; and any other form of assistance permitted under the laws of the requested Party and agreed upon by the Central Authorities of the two Contracting Parties.

I recommend that the Senate give early and favorable consideration to the Treaty, and give its advice and consent to ratification.

GEORGE W. BUSH.

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, October 27, 2003.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty Between the United States of America and Japan on Mutual Legal Assistance in Criminal Matters ("the Treaty"), and a related exchange of notes, both signed at Washington on August 5, 2003. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification, and the exchange of notes be submitted for the information of the Senate.

The Treaty covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force between the United States and a number of other countries. This Treaty contains many provisions similar to those in other treaties and includes the essential provisions sought by the United States. It is accompanied by an exchange of notes (described below), which relates to Article 2 of the Treaty. The Treaty will enhance our ability to investigate and prosecute a variety of offenses. The Treaty is designed to be self-executing and will not require implementing legislation.

Article 1 sets out the scope of assistance available under the Treaty. Article 1(2) contains a non-exhaustive list of the major types of assistance to be provided under the Treaty, including taking testimony, statements or items; examining persons, items or places; locating or identifying persons, items or places; providing items in the possession of governmental departments or agencies; presenting an invitation to a person whose appearance in the requesting Party is sought; transfer of a person in custody for testimony or other purposes; assisting in proceedings related to forfeiture and immobilization of proceeds or instrumentalities of criminal offenses; and any other assistance permitted under the laws of the requested Party and agreed upon between the Central Authorities of the Contracting Parties.

The scope of the Treaty includes not only assistance provided in connection with the investigation, prosecution, and prevention of criminal offenses, but also in certain related proceedings. Significantly, Article 1(3) permits assistance in connection with an administrative investigation of suspected criminal conduct (e.g., an investigation by the Securities and Exchange Commission of suspected securities fraud), in such cases and upon such conditions as the requested Party deems appropriate. The Central Authority of the requesting Party would be required to certify that the authority conducting the investigation has statutory or regulatory authority to

(V)

conduct the investigation of facts that could constitute criminal offenses, and that the testimony, statements or items to be obtained will be used in the requesting Party in an investigation, prosecution or other proceeding in criminal matters, including a decision whether to prosecute.

Article 1(4) states that assistance is to be provided without regard to whether the conduct involved would constitute an offense under the laws of the requested Party, except as otherwise provided in the Treaty (see Article 3 below).

Article 1(5) states explicitly that the Treaty does not create a new right or affect a pre-existing right on the part of any private person to impede the execution of a request or exclude any evidence.

Article 2 provides for the designation of Central Authorities and defines Central Authorities for purposes of the Treaty. For the United States, the Central Authority is the Attorney General or a person designated by the Attorney General. For Japan, the Central Authority is the minister of Justice or the National Public Safety Commission or their designees. The authorization for Japan to designate two agencies is necessary because of the respective jurisdictions of the two agencies concerned. The article provides that the Central Authorities are to communicate directly with one another for the purposes of the Treaty.

This Treaty is accompanied by an exchange of diplomatic notes that further sets forth the specific kinds of requests that will be handled by each agency on the Japanese side. The notes also provide for consultations between the United States and Japan before the implementation of any changes in such designations.

In the exchange of notes Japan has designated the Minister of Justice as the Central Authority with respect to requests made by the United States. With respect to requests made by Japan, the Minister of Justice will also serve as the Central Authority for requests submitted by public prosecutors or judicial police officials, or if a request requires examination of a witness in a U.S. court. The Central Authority in connection with requests made by police officials or imperial guard officers will be the National Public Safety Commission or its designee. The Minister of Justice and the National Public Safety Commission will establish a mechanism to avoid unnecessary duplication of requests and to facilitate efficient and speedy provision of assistance.

Article 3 sets forth the circumstances under which a Requested State's Central Authority may deny assistance under the Treaty. A request may be denied if it relates to a political offense, if the execution of a request would impair security or other essential interests, if a request does not conform to the requirements of this Treaty, or if the conduct would not constitute a criminal offense under the laws of the requested Party and execution of the request requires a court warrant or other compulsory measures under the laws of the requested Party.

Before denying assistance under Article 3(1), the Central Authority of the requested Party is required to consult with its counterpart in the requesting Party to consider whether assistance can be given subject to such conditions as the Central Authority of the requested Party deems necessary. If the requesting Party accepts as-

VII

sistance subject to these conditions, it is required to comply with them. If the Central Authority of the requested Party denies assistance, it is required under Article 3(3) to inform the Central Authority of the requesting Party of the reasons for the denial.

Article 4 prescribes the form and content of written requests under the Treaty, specifying in detail the information required in each request. A request for assistance must be in writing, except that a request may be accepted in another form if the Central Authority of the requested Party considers it appropriate to receive a request by other reliable means. In such cases, a supplementary confirmation of the request may be required in writing.

Article 5 concerns execution of requests. Article 5(1) requires the Central Authority of the requested Party to execute the request promptly or, where appropriate, to transmit it to the authority having jurisdiction to do so. It provides that the competent authorities of the requested Party must do everything in their power to ensure the execution of a request. Under Article 5(2), the Central Authority of the requested Party must make all arrangements for execution of a request in the requested Party.

Article 5(3) provides that requests are to be executed in accordance with the provisions of this Treaty and the laws of the requested Party. The manner or particular procedure described in a request referred to in paragraph 3(2) (taking testimony, statements or items), 3(6) (examination of persons, items or places) or 3(8) (particular procedures) of Article 4 shall be followed to the extent it is in accordance with the laws of the requested Party, and where it is possible. Article 5(4), provides that courts in the United States shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request. In Japan judges will have similar authority to issue the necessary warrants or orders.

Under Article 5(5), if the Central Authority of the requested Party determines that execution of a request would interfere with an ongoing criminal investigation, prosecution, or proceeding in that State, it may postpone execution or make execution subject to conditions deemed necessary after consultations with the Central Authority of the requesting Party. If the requesting Party accepts such conditions, it must comply with them.

Article 5(6) further requires the requested Party, if so requested by the Central Authority of the requesting Party, to make its best efforts to keep confidential the fact a request has been made, its contents, the outcome of executing a request and other relevant information. The Central Authority of the requested Party must inform the requesting Party's Central Authority if the request cannot be executed without disclosure of such information. This provides the requesting Party an opportunity to decide whether to pursue the request or to withdraw it in order to maintain confidentiality.

This article also requires the requested Party's Central Authority to respond to reasonable inquiries by the requesting Party's Central Authority concerning progress toward execution of a particular request; to promptly inform the requesting Party's Central Authority of the outcome of its execution; and, if the request cannot be executed in whole or in part, to inform the requesting Party's Central Authority of the reasons therefor.

VIII

Article 6 apportions between the two Parties the costs incurred in executing a request. It provides that the requested Party must pay all costs relating to the execution of a request, except for the following items to be paid by the requesting Party: fees of expert witnesses; costs of translation, interpretation and transcription; and allowances and expenses related to travel of persons pursuant to Articles 14 and 15. The article further provides that, in the event that a request entails extraordinary expenses, consultation between Central Authorities shall occur in order to determine the terms and conditions for execution.

Article 7 requires the requesting Party, if so requested, not to use any testimony, statements or items provided under the Treaty for any purposes other than those described in the request without the prior consent of the requested Party. Further, if the requesting Party accepts information or evidence under the Treaty, subject to a request by the requested Party's Central Authority that it be kept confidential or be used in accordance with specified terms and conditions, the requesting Party must comply with the conditions. Nothing in the Article prevents the use or disclosure of testimony, statements or items provided under the Treaty to the extent that there is an obligation to do so under the Constitution of the requesting Party in a criminal prosecution. The requesting Party is obliged to notify the requested Party in advance of any such proposed use or disclosure. Once information is made public in the requesting Party in accordance with either of these provisions, it may thereafter be used for any purpose.

Article 8 provides that items provided under the Treaty be transported and maintained in accordance with the conditions specified by the requested Party, including the conditions deemed necessary to protect third-party interests. In particular, the requesting Party shall not examine an item without the consent of the requested Party, if the examination could impair the integrity of the item. The article also provides that the requesting Party return items provided under the Treaty after such items have been used for the purpose described in a request.

Article 9(1) provides that the requested Party shall take testimony, statements or items and shall employ, if necessary, compulsory measures in order to do so. This is one of the principal forms of assistance available under the Treaty. Under Article 9(2), the requested Party is obliged to make its best efforts to make possible the presence of such persons as may be specified in a request during the execution of a request, and allow such persons to question the witness. In the event that direct questioning is not permitted, written questions may be posed to the person from whom testimony, statements or items are sought. Article 9(3) permits a request for the search and seizure of any item for the requesting Party, if such compulsory measures are necessary and the request includes information justifying the use of those measures under the laws of the requested Party. In the event that a person from whom testimony, statements or items are sought asserts a claim of immunity, incapacity, or privilege under the laws of the requesting Party, Article 9(4) provides that the testimony or evidence is to be taken and the claim made known to the Central Authority of the requesting Party for resolution by its competent authorities.

IX

Article 10 requires the requested Party to examine persons, items or places, and to employ compulsory measures, if necessary, in order to do so. The requested Party shall make its best efforts to make possible the presence of such persons as may be specified in a request. Examinations may include the taking of photographs or creation of video records of persons, items or places, and may involve the participation of expert witnesses.

Article 11 states that the requested Party shall make its best efforts to locate or identify persons, items or places.

Article 12 requires the requested Party to provide the requesting Party with items that are in the possession of governmental departments and agencies in the requested Party and are available to the general public. The requested Party may also provide items that are in the possession of a governmental department or agency, and are not available to the general public, to the same extent and under the same conditions as such items would be available to its own investigative and prosecuting authorities.

Article 13 covers the authentication of documents and certification of the chain of custody of items seized during the execution of a request. Article 13(1) provides that testimony, statements or items provided may be authenticated by the requested Party by use of a form in the Attachment to the Treaty. The Attachment (see below) is an integral part of the Treaty. Testimony, statements or items so authenticated shall be admissible in evidence in proceedings in the requesting Party in accordance with the relevant provisions of the Attachment. Article 13(2) provides that the continuity of custody of items seized, the identity of the items and the integrity of their condition may be certified by the requested Party by use of a form in the Attachment. Such certification shall also be admissible in evidence in proceedings in the requesting Party.

Article 14(1) provides a mechanism for the requesting Party to ask for the voluntary appearance in its territory of a person located in the requested Party whose appearance is sought before an appropriate authority in the requesting Party. The requesting Party must indicate the extent to which the expenses will be paid and the Central Authority of the requested Party must promptly inform its counterpart in the requesting Party of the person's response. Article 14(2) states that a person who consents to appear before the appropriate authority in the requesting Party pursuant to this Article shall not be subject to detention or any restriction of personal liberty by reason of any conduct or conviction that preceded that person's departure from the requested Party. Under Article 14(3), any safe conduct provided for by this Article ceases seven days after the person was notified by the appropriate authority of the requesting Party that the person's presence is no longer required, or if the person has left the requesting Party and voluntarily returns to it, or if the person fails to appear before the appropriate authority on the scheduled appearance date. The Central Authority of the requesting Party must notify the Central Authority of the requested Party when safe conduct under this Article ceases.

Article 15(1) provides for the temporary transfer of a person in the custody of one Contracting Party to the other for testimony or other purposes under the Treaty, if the person consents and the Central Authorities of both Parties agree, when permitted under

x

the laws of the requested Party. For example, a witness incarcerated in one country may be transferred to the other country to give testimony in the presence of a defendant facing criminal charges in that other country.

Article 15(2) sets forth both the express authority and the obligation of the receiving Party to maintain the person transferred in custody unless otherwise authorized by the sending Party. The person transferred must be returned immediately to the custody of the sending Party or as otherwise agreed by the Central Authorities, and the sending Party is not required to initiate extradition proceedings for the return of the person transferred. The person transferred also receives credit for time served in the custody of the receiving Party.

Article 15(3) provides that the person transferred to the receiving Party shall enjoy the safe conduct provided for in Article 14 of the Treaty until the person's return to the sending Party, unless the Central Authorities agree otherwise and the person consents.

Article 16(1) obligates the Parties to assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds or instrumentalities of criminal offenses, including action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

Article 16(2) provides that, if the Central Authority of one Party becomes aware that proceeds or instrumentalities of criminal offenses that may be forfeitable or otherwise subject to seizure are located in the other Party, it may so inform the Central Authority of the other Party. If the Party receiving such information has jurisdiction, it may present this information to its authorities for a determination whether any action is appropriate. The Central Authority of the Party receiving such information is required to inform the Central Authority of the Party that provided the information of any action taken.

Under Article 16(3), the Party having custody over proceeds or instrumentalities of criminal offenses is required to retain or dispose of them in accordance with its laws. The custodial Party may transfer such proceeds or instrumentalities, in whole or in part, to the other Contracting Party, to the extent permitted by the transferring Party's laws and upon such conditions as it deems appropriate.

Article 17 states that assistance and procedures provided in the Treaty do not prevent either Party from granting assistance to the other through the provisions of other applicable international agreements or through the provisions of its national laws.

Article 18 provides that the Central Authorities shall hold consultations for the purpose of facilitating speedy and effective assistance under the Treaty, and may agree upon such measures as may be necessary for this purpose. The Contracting Parties shall, if necessary, hold consultations on any matter that may arise in the Treaty's interpretation or implementation.

Article 19 provides that the Treaty is subject to ratification and that the instruments are to be exchanged as soon as possible. The Treaty then enters into force on the thirtieth day after the date of the exchange of instruments. Article 19(3) provides that the Treaty applies to requests presented on or after the date of its entry into

XI

force, whether the relevant acts occurred before, on or after that date. Article 19(4) further provides that either Contracting Party may terminate the Treaty by giving six months written notice to the other Contracting Party.

The Attachment contains the forms for authentication of business records and foreign public documents and certification with respect to seized items, as provided in Article 13 above. The Attachment is an integral part of the Treaty.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate as soon as possible.

Respectfully submitted,

COLIN L. POWELL.

TREATY BETWEEN
THE UNITED STATES OF AMERICA AND JAPAN
ON MUTUAL LEGAL ASSISTANCE
IN CRIMINAL MATTERS

The United States of America and Japan,

Desiring to establish more effective cooperation between both countries in the area of mutual legal assistance in criminal matters,

Desiring that such cooperation will contribute to combating crime in both countries,

Have agreed as follows:

Article 1

1.   Each Contracting Party shall, upon request by the other Contracting Party, provide mutual legal assistance (hereinafter referred to as "assistance") in connection with investigations, prosecutions and other proceedings in criminal matters in accordance with the provisions of this Treaty.

2.   The assistance shall include the following:

    (1)   taking testimony, statements or items;

    (2)   examining persons, items or places;

    (3)   locating or identifying persons, items or places;

    (4)   providing items in the possession of governmental departments or agencies;

    (5)   presenting an invitation to a person whose appearance in the requesting Party is sought;

    (6)   transfer of a person in custody for testimony or other purposes;

    (7)   assisting in proceedings related to forfeiture and immobilization of proceeds or instrumentalities of criminal offenses; and

(1)

2

(8)  any other assistance permitted under the laws of the requested Party and agreed upon between the Central Authorities of the Contracting Parties.

The term "items" as used in this Treaty means documents, records and articles of evidence.

3.    Each Contracting Party shall, upon request by the other Contracting Party, provide assistance in accordance with the provisions of this Treaty in connection with an administrative investigation of suspected criminal conduct, in such cases and upon such conditions as the Central Authority of the requested Party deems appropriate, if the Central Authority of the requesting Party certifies that:

(1)  the authority conducting the administrative investigation has statutory or regulatory authority for the administrative investigation of facts that could constitute criminal offenses, including referring matters to prosecutors for criminal prosecution or providing testimony, statements or items obtained during administrative investigations to prosecutors in accordance with specific procedures; and

(2)  the testimony, statements or items to be obtained will be used in the requesting Party in an investigation, prosecution or other proceeding in criminal matters, including the decision whether to prosecute.

4.    Except as otherwise provided for in this Treaty, assistance shall be provided without regard to whether the conduct that is the subject of the investigation, prosecution or other proceeding in the requesting Party would constitute a criminal offense under the laws of the requested Party.

5.    This Treaty is intended solely for assistance between the Contracting Parties.  The provisions of this Treaty neither create a new right nor affect a pre-existing right on the part of a private person to impede the execution of a request or to suppress or exclude any evidence.

Article 2

1.    Each Contracting Party shall designate the Central Authority that is to perform the functions provided for in this Treaty:

(1)  For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General.

3

(2)  For Japan, the Central Authority shall
be the Minister of Justice or the National Public Safety
Commission or persons designated by them.

2.    Requests for assistance under this Treaty shall be
made by the Central Authority of the requesting Party to
the Central Authority of the requested Party.

3.    The Central Authorities of the Contracting Parties
shall communicate directly with one another for the
purposes of this Treaty.

Article 3

1.    The Central Authority of the requested Party may deny
assistance if the requested Party considers that:

(1)  a request relates to a political offense;

(2)  the execution of a request would impair its
security or other essential interests;

(3)  a request does not conform to the requirements of
this Treaty; or

(4)  the conduct that is the subject of the
investigation, prosecution or other proceeding in the
requesting Party would not constitute a criminal offense
under the laws of the requested Party and the execution of
a request requires a court warrant or other compulsory
measures under the laws of the requested Party.

2.    Before denying assistance pursuant to paragraph 1, the
Central Authority of the requested Party shall consult with
the Central Authority of the requesting Party to consider
whether assistance can be provided subject to such
conditions as the requested Party may deem necessary.  If
the requesting Party accepts such conditions, the
requesting Party shall comply with them.

3.    If assistance is denied, the Central Authority of the
requested Party shall inform the Central Authority of the
requesting Party of the reasons for the denial.

4

## Article 4

1.    The Central Authority of the requesting Party shall make a request in writing. However, the Central Authority of the requesting Party may make a request by any other reliable means of communication if the Central Authority of the requested Party considers it appropriate to receive a request by that means.  In such cases, the Central Authority of the requested Party may require the Central Authority of the requesting Party to provide supplementary confirmation of the request in writing.  A request shall be made in the language of the requested Party unless otherwise agreed between the Central Authorities of the Contracting Parties.

2.    A request shall include the following:

(1)  the name of the authority conducting the investigation, prosecution or other proceeding;

(2)  the facts pertaining to the subject of the investigation, prosecution or other proceeding; the nature and the stage of the investigation, prosecution or other proceeding; and the text of the relevant laws of the requesting Party;

(3)  a description of the assistance requested; and

(4)  a description of the purpose of the assistance requested.

3.    To the extent necessary and possible, a request shall also include the following:

(1)  information on the identity and whereabouts of any person from whom testimony, statements or items are sought;

(2)  a description of the manner in which testimony, statements or items are to be taken or recorded;

(3)  a list of questions to be asked of the person from whom testimony, statements or items are sought;

(4)  a precise description of persons or places to be searched and of items to be sought;

(5)  information regarding persons, items or places to be examined;

5

(6)  a description of the manner in which an examination of persons, items or places is to be conducted and recorded, including the format of any written record to be made concerning the examination;

(7)  information regarding persons, items or places to be located or identified;

(8)  a description of any particular procedure to be followed in executing the request;

(9)  information on the allowances and expenses to which a person whose appearance is sought before the appropriate authority in the requesting Party will be entitled; and

(10) any other information that should be brought to the attention of the requested Party to facilitate the execution of the request.

### Article 5

1.    The Central Authority of the requested Party shall promptly execute a request in accordance with the relevant provisions of this Treaty or transmit it to the authority having jurisdiction to do so.  The competent authorities of the requested Party shall do everything in their power to ensure the execution of a request.

2.    The Central Authority of the requested Party shall make all necessary arrangements for the execution of a request in the requested Party.

3.    A request shall be executed in accordance with the provisions of this Treaty and the laws of the requested Party.  The manner or particular procedure described in a request referred to in paragraph 3(2), 3(6) or 3(8) of Article 4 shall be followed to the extent it is in accordance with the laws of the requested Party, and where it is possible.

4.    In order to execute a request pursuant to paragraph 1,

(1)  with respect to the United States of America, the courts shall have the authority to issue subpoenas, search warrants or other orders necessary to execute a request; and

(2)  with respect to Japan, the judge will have the authority to issue warrants or orders necessary to execute a request.

6

5.    If the execution of a request is deemed 'to interfere
with an ongoing investigation, prosecution or other
proceeding in the requested Party, the Central Authority of
the requested Party may postpone the execution or make the
execution subject to conditions deemed necessary after
consultations between the Central Authorities of the
Contracting Parties. If the requesting Party accepts such
conditions, the requesting Party shall comply with them.

6.    The requested Party shall make its best efforts to
keep confidential the fact that a request has been made,
the contents of a request, the outcome of the execution of
a request and other relevant information concerning the
execution of a request if such confidentiality is requested
by the Central Authority of the requesting Party. If a
request cannot be executed without disclosure of such
information, the Central Authority of the requested Party
shall so inform the Central Authority of the requesting
Party, which shall then determine whether the request
should nevertheless be executed.

7.    The Central Authority of the requested Party shall
respond to reasonable inquiries by the Central Authority of
the requesting Party concerning the status of the execution
of a request.

8.    Upon request by the Central Authority of the
requesting Party, the Central Authority of the requested
Party shall inform in advance the Central Authority of the
requesting Party of the date and place of the execution of
a request.

9.    The Central Authority of the requested Party shall
promptly inform the Central Authority of the requesting
Party of the result of the execution of a request, and
shall provide the Central Authority of the requesting Party
with the testimony, statements or items obtained as a
result. If a request cannot be executed in whole or in
part, the Central Authority of the requested Party shall
inform the Central Authority of the requesting Party of the
reasons therefor.

7

### Article 6

1.    Unless otherwise agreed between the Central
Authorities of the Contracting Parties, the requested Party
shall pay all costs related to the execution of a request,
except for the fees of an expert witness, the costs of
translation, interpretation and transcription, and the
allowances and expenses related to travel of persons
pursuant to Articles 14 and 15.  Such fees, costs,
allowances and expenses shall be paid by the requesting
Party.

2.    If it becomes apparent that expenses of an
extraordinary nature are required to execute a request, the
Central Authorities of the Contracting Parties shall
consult to determine the conditions under which a request
will be executed.

### Article 7

1.    The Central Authority of the requested Party may
request that the requesting Party not use any testimony,
statements or items provided under this Treaty other than
in the investigation, prosecution or other proceeding
described in a request without prior consent of the Central
Authority of the requested Party.  In such cases, the
requesting Party shall comply with such a request.

2.    The Central Authority of the requested Party may
request that testimony, statements or items provided under
this Treaty be kept confidential or be used only subject to
other conditions it may specify.  If the requesting Party
agrees to such confidentiality or accepts such conditions,
it shall comply with them.

3.    Nothing in this Article shall preclude the use or
disclosure of testimony, statements or items provided under
this Treaty to the extent that there is an obligation under
the Constitution of the requesting Party to do so in a
criminal prosecution.  The Central Authority of the
requesting Party shall inform the Central Authority of the
requested Party in advance of any such proposed use or
disclosure.

4.    Testimony, statements or items provided under this
Treaty that have been made public in the requesting Party
consistent with the provisions of this Article may
thereafter be used for any purpose.

8

### Article 8

1.   The Central Authority of the requested Party may request that the requesting Party transport and maintain items provided under this Treaty in accordance with the conditions specified by the Central Authority of the requested Party, including the conditions deemed necessary to protect third-party interests in the items to be transferred.

2.   The Central Authority of the requested Party may request that the requesting Party return any items provided under this Treaty in accordance with the conditions specified by the Central Authority of the requested Party, after such items have been used for the purpose described in a request.

3.   The requesting Party shall comply with a request made pursuant to paragraph 1 or 2. When such a request has been made, the requesting Party shall not examine the items without the prior consent of the Central Authority of the requested Party if the examination impairs or could impair the item.

### Article 9

1.   The requested Party shall take testimony, statements or items, and shall employ, if necessary, compulsory measures in order to do so.

2.   The requested Party shall make its best efforts to make possible the presence of such persons as specified in a request for taking testimony, statements or items during the execution of the request, and to allow such persons to question the person from whom testimony, statements or items are sought. In the event that such direct questioning is not permitted, such persons shall be allowed to submit questions to be posed to the person from whom testimony, statements or items are sought.

3.   The requested Party shall execute a request for the search and seizure of any item for the requesting Party, if such measures are necessary and the request includes information justifying those measures under the laws of the requested Party.

4.   (1)  If a person, from whom testimony, statements or items are sought pursuant to this Article, asserts a claim of immunity, incapacity or privilege under the laws of the requesting Party, testimony, statements or items shall nevertheless be taken.

9

(2)  In cases where testimony, statements or items are
taken in accordance with sub-paragraph (1), they shall be
provided, together with the claim referred to in that sub-
paragraph, to the Central Authority of the requesting Party
for resolution of the claim by the competent authorities of
the requesting Party.

### Article 10

1.    The requested Party shall examine persons, items or
places, and shall employ, if necessary, compulsory measures
in order to do so.  Such measures may include the
destruction of items, in whole or in part, and the entry
into places.

2.    Examinations pursuant to this Article may include
taking of photographs or creation of video records of
persons, items or places, and may involve the participation
of expert witnesses.

3.    The requested Party shall make its best efforts to
make possible the presence of such persons as specified in
a request for examining persons, items or places during the
execution of a request.

### Article 11

    The requested Party shall make its best efforts to
locate or identify persons, items or places.

### Article 12

1.    The requested Party shall provide the requesting Party
with items that are in the possession of governmental
departments and agencies of the requested Party and are
available to the general public.

2.    The requested Party may provide the requesting Party
with items that are in the possession of governmental
departments and agencies of the requested Party and are not
available to the general public, to the same extent and
under the same conditions as such items would be available
to its investigative and prosecuting authorities.

10

### Article 13

1.    Testimony, statements or items provided under this
Treaty may be authenticated by the requested Party by use
of a form in the Attachment, which is an integral part of
this Treaty.  Testimony, statements or items authenticated
in such manner shall be admissible in evidence in
proceedings in the requesting Party in accordance with the
relevant provisions of the Attachment.

2.    The continuity of custody of items seized by the
requested Party, the identity of the items and the
integrity of their condition may be certified by the
requested Party by use of a form in the Attachment.  Such
certification shall be admissible in evidence in
proceedings in the requesting Party in accordance with the
relevant provisions of the Attachment.

### Article 14

1.    The requested Party shall present an invitation to the
person in the requested Party whose appearance before the
appropriate authority in the requesting Party is sought.
The Central Authority of the requesting Party shall inform
the Central Authority of the requested Party of the extent
to which the allowances and expenses for such appearance
will be paid by the requesting Party.  The Central
Authority of the requested Party shall promptly inform the
Central Authority of the requesting Party of the response
of the person.

2.    The person who consents to appear before the
appropriate authority in the requesting Party according to
the invitation referred to in paragraph 1 shall not be
subject to detention or any restriction of personal liberty
in its territory by reason of any conduct or conviction
that precedes that person's departure from the requested
Party.

3.    (1)  The safe conduct provided in accordance with
paragraph 2 to the person who consents to appear before the
appropriate authority in the requesting Party according to
the invitation referred to in paragraph 1 shall cease when:

  (a)   seven days have passed after the person was
        notified by the appropriate authority that the
        person's appearance is no longer necessary;

  (b)   the person, having left the requesting Party,
        voluntarily returns to it; or

11

    (c)  the person fails to appear before the appropriate authority on the scheduled appearance date.

    (2)  When the notification is made pursuant to sub-paragraph (1)(a), or when the safe conduct ceases pursuant to sub-paragraph (1)(b) or (1)(c), the Central Authority of the requesting Party shall so inform the Central Authority of the requested Party without delay.

### Article 15

1.    A person in the custody of one Contracting Party whose presence in the territory of the other Contracting Party is necessary for testimony or other purposes shall be transferred for those purposes to that other Contracting Party, if the person consents and if the Central Authorities of the Contracting Parties agree, when permitted under the laws of the requested Party.

2.    (1)  The receiving Party shall have the authority and the obligation to keep the person transferred pursuant to paragraph 1 in the custody of the receiving Party, unless permitted by the sending Party to do otherwise.

    (2)  The receiving Party shall immediately return the person transferred to the custody of the sending Party as agreed beforehand, or as otherwise agreed between the Central Authorities of the Contracting Parties.

    (3)  The receiving Party shall not require the sending Party to initiate extradition proceedings for the return of the person transferred.

    (4)  The person transferred shall receive credit for service of the sentence imposed in the sending Party for the time served in the custody of the receiving Party.

3.    The person transferred to the receiving Party pursuant to this Article shall enjoy the safe conduct provided for in Article 14 in the receiving Party until the return to the sending Party, unless the person consents and the Central Authorities of the Contracting Parties agree otherwise. In implementing this paragraph, "the requesting Party" and "the requested Party" referred to in Article 14 shall be read as "the receiving Party" and "the sending Party" respectively.

12

### Article 16

1.    The requested Party shall assist, to the extent
permitted by its laws, in proceedings related to the
forfeiture of the proceeds or instrumentalities of criminal
offenses.  Such assistance may include action to
temporarily immobilize the proceeds or instrumentalities
pending further proceedings.

2.    If the Central Authority of one Contracting Party
becomes aware of proceeds or instrumentalities of criminal
offenses that are located in the territory of the other
Contracting Party and may be forfeitable or otherwise
subject to seizure under the laws of that other Contracting
Party, the Central Authority of the first Contracting Party
may so inform the Central Authority of that other
Contracting Party.  If that other Contracting Party has
jurisdiction in this regard, its Central Authority may
present the information to its relevant authorities for a
determination whether any action is appropriate.  The
Central Authority of that other Contracting Party shall
report to the Central Authority of the first Contracting
Party on the action taken by the relevant authorities.

3.    A Contracting Party that has custody over such
proceeds or instrumentalities of criminal offenses shall
retain or dispose of them in accordance with its laws.
That Contracting Party may transfer such proceeds or
instrumentalities, in whole or in part, to the other
Contracting Party, to the extent permitted by the laws of
the first Contracting Party and upon such conditions as it
deems appropriate.

### Article 17

Nothing in this Treaty shall prevent either
Contracting Party from requesting assistance from or
providing assistance to the other Contracting Party in
accordance with other applicable international agreements,
or pursuant to its laws that may be applicable.

### Article 18

1.    The Central Authorities of the Contracting Parties
shall hold consultations for the purpose of facilitating
speedy and effective assistance under this Treaty, and may
decide on such measures as may be necessary for this
purpose.

13

2.    The Contracting Parties shall, if necessary, hold
consultations on any matter that may arise in the
interpretation or implementation of this Treaty.

Article 19

1.    This Treaty shall be subject to ratification, and the
instruments of ratification shall be exchanged at Tokyo as
soon as possible.

2.    This Treaty shall enter into force on the thirtieth
day after the date of the exchange of the instruments of
ratification.

3.    This Treaty shall apply to any request for assistance
presented on or after the date upon which this Treaty
enters into force, whether the acts relevant to the request
were committed before, on or after that date.

4.    Either Contracting Party may terminate this Treaty at
any time by giving six months written notice to the other
Contracting Party.

        IN WITNESS WHEREOF, the undersigned, being duly
authorized by their respective Governments, have signed
this Treaty.

        DONE at Washington, in duplicate, in the English and
Japanese languages, both texts being equally authentic,
this fifth day of August, 2003.

FOR THE UNITED STATES          FOR JAPAN:
OF AMERICA:

14

Attachment

1.    (1)  Originals or copies of business records requested
by the United States of America may be authenticated by
Japan by use of CERTIFICATION OF BUSINESS RECORDS, attached
hereto as Form A-1.  Originals or copies of business
records authenticated in such manner shall be admissible in
evidence in the United States of America for the truth of
the matters asserted therein.

      (2)  Originals or copies of business records requested
by Japan may be authenticated by the United States of
America by use of CERTIFICATION OF BUSINESS RECORDS,
attached hereto as Form A-2.  Originals or copies of
business records authenticated in such manner shall be
admissible in evidence in Japan when a court so decides in
accordance with its laws.

2.    (1)  Originals or copies of foreign public documents
requested by the United States of America may be
authenticated by Japan by use of CERTIFICATION OF FOREIGN
PUBLIC DOCUMENTS, attached hereto as Form B-1, and no
further authentication or certification shall be required.
Originals or copies of foreign public documents
authenticated in such manner shall be admissible in
evidence in the United States of America.

      (2)  Originals or copies of foreign public documents
requested by Japan may be authenticated by the United
States of America by use of CERTIFICATION OF FOREIGN PUBLIC
DOCUMENTS, attached hereto as Form B-2.  Originals or
copies of foreign public documents authenticated in such
manner shall be admissible in evidence in Japan when a
court so decides in accordance with its laws.

3.    (1)  The continuity of custody of items seized by
Japan's competent authorities in accordance with Article 9
of this Treaty, the identity of the items and the integrity
of their condition, may be certified by Japan by use of
CERTIFICATION WITH RESPECT TO SEIZED ITEMS, attached hereto
as Form C-1, and no further certification shall be
required.  Such certification shall be admissible in
evidence in the United States of America.

15

(2)  The continuity of custody of items seized by the
United States competent authorities in accordance with
Article 9 of this Treaty, the identity of the items and the
integrity of their condition, may be certified by the
United States of America by use of CERTIFICATION WITH
RESPECT TO SEIZED ITEMS, attached hereto as Form C-2.  Such
certification shall be admissible in evidence in Japan when
a court so decides in accordance with its laws.

16

Form A-1
(For requests by the United States of America)
CERTIFICATION OF BUSINESS RECORDS

I, _____, on penalty of criminal
        (name)
punishment for false statement, hereby state as follows:

1.    I am employed by _____
                         (name of business from which the records
_____ and my title is _____.
are sought)                 (title)

2.    Each of the records attached hereto is the original or

a duplicate of the original record in the custody of

_____.
(name of business from which the records are sought)

3.    (1)  Such records were made, at or near the time of

the occurrence of the matters set forth, by (or from

information transmitted by) a person with knowledge of

those matters;

      (2)  such records were kept in the course of a

regularly conducted business activity;

      (3)  the business activity made such records as a

regular practice; and

      (4)  if any such record is not the original, it is a

duplicate of the original.

                         _____
                              (signature)

                         _____
                              (date)

17

Form A-2
(For requests by Japan)
CERTIFICATION OF BUSINESS RECORDS

I, _____, on penalty of criminal
         (name)
punishment for false statement or false attestation, hereby
state as follows:

1.    I am employed by _____
                          (name of business from which the records
_____ and my title is _____.
are sought)                  (title)
2.    Each of the records attached hereto is the original or
a duplicate of the original record in the custody of

_____
(name of business from which the records are sought)
3.    (1)  Such records were made, at or near the time of
the occurrence of the matters set forth, by (or from
information transmitted by) a person with knowledge of
those matters;

      (2)  such records were kept in the course of a
regularly conducted business activity;

      (3)  the business activity made such records as a
regular practice; and

      (4)  if any such record is not the original, it is a
duplicate of the original.

                        _____
                                (signature)

                        _____
                                (date)

      Sworn to or affirmed orally before me,

_____, a _____
       (name)          (position of person authorized to administer
_____, this _____ day of _____, 20___.
 oaths)

18

Form B-1
(For requests by the United States of America)
CERTIFICATION OF FOREIGN PUBLIC DOCUMENTS

I, _____, on penalty of criminal
(name)
punishment for false statement or false declaration, state
as follows:

1.   My position with the authority of _____
(Japan or local government)
is _____.
(title)

2.   In that position I am authorized by the laws or
ordinances of _____ to declare that the
(Japan or local government)
documents attached hereto and described below are originals
or duplicates of the original documents which are recorded
or filed in _____, which is an office
(name of office or agency)
or agency of _____.
(Japan or local government)

3.   Description of documents:


_____
(signature)

_____
(title)

_____
(date)

19

Form B-2
(For requests by Japan)
CERTIFICATION OF FOREIGN PUBLIC DOCUMENTS

I, _____, on penalty of criminal
         (name)
punishment for false statement or false declaration, state
as follows:

1.   My position with the authority of _____ is
                                              (territory)
_____.
    (title)

2.   In that position I am authorized by the laws of

_____ to declare that the documents attached
   (territory)
hereto and described below are originals or duplicates of

the original documents which are recorded or filed in

_____, which is an office or agency of
(name of office or agency)

_____.
    (territory)

3.   Description of documents:




                              _____
                                     (signature)

                              _____
                                       (title)

                              _____
                                       (date)

20

Form C-1
(For requests by the United States of America)
CERTIFICATION WITH RESPECT TO SEIZED ITEMS

I, _____, on penalty of criminal
        (name)
punishment for false statement, state as follows:

1.   My position with the authority of _____
                                        (Japan or local government)
is _____.
      (title)

2.   I received custody of the items listed below from

_____ on _____, at _____ and I
(name of person)      (date)       (place)
relinquished custody of the items listed below to

_____ on _____, at _____ in the same
(name of person)      (date)       (place)
condition as when I received them (or, if different, as
noted below).

3.   Description of items:


4.   Changes in condition while in my custody:



                         _____
                                (signature)

                         _____
                                (title)

                         _____
                                (place)

                         _____
                                (date)

21

Form C-2
(For requests by Japan)
CERTIFICATION WITH RESPECT TO SEIZED ITEMS

I, _____, on penalty of criminal
         (name)
punishment for false statement or false declaration, state
as follows:

1.    My position with the authority of _____ is
                                              (territory)
_____.
  (title)
2.    I received custody of the items listed below from

_____ on _____, at _____ and I
(name of person)      (date)         (place)
relinquished custody of the items listed below to

_____ on _____, at _____ in the same
(name of person)      (date)         (place)
condition as when I received them (or, if different, as
noted below).

3.    Description of items:


4.    Changes in condition while in my custody:




                            _____
                                    (signature)

                            _____
                                      (title)

                            _____
                                      (place)

                            _____
                                      (date)



22

**DEPARTMENT OF STATE**
**WASHINGTON**

August 5, 2003

Excellency:

I have the honor to acknowledge the receipt of Your

Excellency's Note dated August 5, 2003, which reads as

follows:

"I have the honor to refer to paragraph 1(2) of
Article 2 of the Treaty between Japan and the United
States of America on Mutual Legal Assistance in
Criminal Matters (hereinafter referred to as "the
Treaty") signed at Washington today and to confirm,
on behalf of the Government of Japan, the following
understanding reached between the Government of Japan
and the Government of the United States of America:

The Government of Japan designates the Central
Authority of Japan with respect to requests by Japan
and those by the United States of America under the
Treaty as follows:

(1)  With respect to requests by the United States
of America, the Minister of Justice or persons
designated by the Minister of Justice (hereinafter
referred to as "the Minister of Justice") will be the
Central Authority.

His Excellency
    Mr. Ryozo Kato,
        Ambassador Extraordinary
            and Plenipotentiary of Japan
                to the United States of America.

**DIPLOMATIC NOTE**

23

-2-

(2)  With respect to requests by Japan, the Central Authority in connection with requests referred to it by public prosecutors or judicial police officials other than police officials and imperial guard officers will be the Minister of Justice.  The Central Authority in connection with requests referred to it by police officials or imperial guard officers will be the National Public Safety Commission or persons designated by the National Public Safety Commission (hereinafter referred to as "the National Public Safety Commission").  However, where the execution of a request requires examination of a witness by a court order in the United States of America, the Central Authority in connection with such a request will be the Minister of Justice.

(3)  The Minister of Justice and the National Public Safety Commission, as the Central Authority of Japan, will establish a mechanism to avoid unnecessary duplication of requests to be made by them and to facilitate efficient and speedy provision of assistance.  To this end, the National Public Safety Commission will ensure that the Minister of Justice be informed in advance of a request to be made by the National Public Safety Commission.

(4)  The Central Authority of the United States of America may consult, if necessary, on the matters regarding execution of a request by Japan with the Minister of Justice in respect to any request, regardless of whether the Minister of Justice or the National Public Safety Commission is involved in the request.  When the subject of the consultation is a request by the National Public Safety Commission, the Minister of Justice will consult with the National Public Safety Commission in order to coordinate execution of the request between them.

The Government of Japan shall notify the Government of the United States of America of any changes in the matters set forth above.  Before the implementation of any such changes, the two Governments shall, if necessary, hold consultations under paragraph 2 of Article 18 of the Treaty.

24

-3-

I have the further honor to propose that the
present Note and Your Excellency's Note in reply
confirming the foregoing understanding on behalf of
the Government of the United States of America shall
be regarded as constituting an agreement between the
two Governments, which shall enter into force on the
same day when the Treaty enters into force."

The Government of the United States of America

welcomes the designations made by the Government of Japan

in the foregoing Note.  The Government of the United States

of America emphasizes that a clear understanding of which

Authority will be the Central Authority of Japan with

respect to various kinds of requests is essential for

efficient implementation of the Treaty.

I have the further honor to confirm, on behalf of the

Government of the United States of America, the foregoing

understanding and to agree that Your Excellency's Note and

this Note in reply shall be regarded as constituting an

agreement between the two Governments, which shall enter

into force on the same day when the Treaty enters into

force.

I avail myself of this opportunity to renew to Your

Excellency the assurances of my highest consideration.

25

Translation

Washington, August 5, 2003

Excellency,

I have the honor to refer to paragraph 1(2) of Article
2 of the Treaty between Japan and the United States of
America on Mutual Legal Assistance in Criminal Matters
(hereinafter referred to as "the Treaty") signed at
Washington today and to confirm, on behalf of the
Government of Japan, the following understanding reached
between the Government of Japan and the Government of the
United States of America:

The Government of Japan designates the Central
Authority of Japan with respect to requests by Japan and
those by the United States of America under the Treaty as
follows:

(1)  With respect to requests by the United States of
America, the Minister of Justice or persons designated by
the Minister of Justice (hereinafter referred to as "the
Minister of Justice") will be the Central Authority.

(2)  With respect to requests by Japan, the Central
Authority in connection with requests referred to it by
public prosecutors or judicial police officials other than
police officials and imperial guard officers will be the
Minister of Justice.  The Central Authority in connection
with requests referred to it by police officials or
imperial guard officers will be the National Public Safety
Commission or persons designated by the National Public
Safety Commission (hereinafter referred to as "the National
Public Safety Commission").  However, where the execution
of a request requires examination of a witness by a court
order in the United States of America, the Central
Authority in connection with such a request will be the
Minister of Justice.


His Excellency
Mr. Colin L. Powell
The Secretary of State
of the United States of America

26

(3)  The Minister of Justice and the National Public
Safety Commission, as the Central Authority of Japan, will
establish a mechanism to avoid unnecessary duplication of
requests to be made by them and to facilitate efficient and
speedy provision of assistance.  To this end, the National
Public Safety Commission will ensure that the Minister of
Justice be informed in advance of a request to be made by
the National Public Safety Commission.

(4)  The Central Authority of the United States of
America may consult, if necessary, on the matters regarding
execution of a request by Japan with the Minister of
Justice in respect to any request, regardless of whether
the Minister of Justice or the National Public Safety
Commission is involved in the request.  When the subject of
the consultation is a request by the National Public Safety
Commission, the Minister of Justice will consult with the
National Public Safety Commission in order to coordinate
execution of the request between them.

The Government of Japan shall notify the Government of
the United States of America of any changes in the matters
set forth above.  Before the implementation of any such
changes, the two Governments shall, if necessary, hold
consultations under paragraph 2 of Article 18 of the
Treaty.

I have the further honor to propose that the present
Note and Your Excellency's Note in reply confirming the
foregoing understanding on behalf of the Government of the
United States of America shall be regarded as constituting
an agreement between the two Governments, which shall enter
into force on the same day when the Treaty enters into
force.

I avail myself of this opportunity to renew to Your
Excellency the assurances of my highest consideration.

> Ryozo Kato
> Ambassador Extraordinary
> and Plenipotentiary of Japan
> to the United States of America

27

書簡をもって啓上いたします。本使は、本日ワシントンで署名された刑事に関する共助に関する日本国と

アメリカ合衆国との間の条約（以下「条約」という。）第二条1(2)に言及するとともに、日本国政府とアメリ

カ合衆国政府との間で到達した次の了解を日本国政府に代わって確認する光栄を有します。

日本国政府は、条約に基づく日本国からの請求及びアメリカ合衆国からの請求に係る中央当局に関し、次

のとおり指定する。

(1)　アメリカ合衆国による請求については、法務大臣又は法務大臣が指定する者（以下「法務大臣」とい

う。）を中央当局とする。

(2)　日本国による請求については、検察官又は司法警察職員（警察官及び皇宮護衛官を除く。）により送付さ

れた請求に関連する中央当局は、法務大臣とする。警察官又は皇宮護衛官により送付された請求に関連す

る中央当局は、国家公安委員会又は国家公安委員会が指定する者（以下「国家公安委員会」という。）とす

る。ただし、請求された共助の実施に当たりアメリカ合衆国において裁判所の命令による証人の尋問が必

要となる場合には、当該請求に関連する中央当局は、法務大臣とする。

(3)　法務大臣及び国家公安委員会は、日本国の中央当局として、これらの機関が行う請求の不必要な重複を

28

避け、効率的かつ迅速な共助の実施を促進するための仕組みを設ける。このため、国家公安委員会は、請求を行う前に当該請求につき法務大臣に通報する。

(4)　アメリカ合衆国の中央当局は、必要に応じ、日本国により請求された共助の実施（当該請求を法務大臣が行うか国家公安委員会が行うかを問わない）に関する事項について法務大臣と協議することができる。協議の対象が国家公安委員会による請求である場合には、法務大臣は、当該請求された共助の実施について調整するために国家公安委員会と協議する。

日本国政府は、アメリカ合衆国政府に対し、前記の事項に関するいかなる変更をも通報するものとする。両政府は、当該変更の実施に先立ち、条約第十八条2に基づき、必要に応じ協議するものとする。

本使は、更に、この書簡及び前記の了解をアメリカ合衆国政府に代わって確認する閣下の返簡が、両政府間の合意を構成するものとみなし、その合意が条約の効力発生の日に効力を生ずるものとすることを提案する光栄を有します。

本使は、以上を申し進めるに際し、ここに重ねて閣下に向かって敬意を表します。

29

